Curia, per

O’Nealu, J.
In pleading, the rule is, if the party objecting intends to avail himself of any defect not of substance, he must demur specially. 1 Chitty’s Plead. 642. Thus if a plea, replication or rejoinder be double, it is ground of special, but not of general demurrer. 1 Chit. Plead. 512. For if the whole matter thus defectively stated, or either of the facts set out as the defence, be enough to bar the plaintiff, upon a general demurrer the defendant is entitled to judgment. In pleading, the statement of several facts does not necessarily subject it to the objection of duplipity. Whenever several matters are constituent parts of the same entire defence, and form one connected proposition, or are alleged as inducements to, or as a consequence of, another fact, then they may be stated, and the pleading will not be double. 1 Chitty,’s PI. 512. The degree of certainty requisite in a replication or rejoinder, is certainty to a certain intent in general, which is such a statement as “ upon a fair and reasonable construction may be called certain, without recurrence to possible facts which do not appear.” 1 Chitty’s Plead. 237. That greatest degree, “ certainty to a certain intent in every particular,” which is not merely a rule of construction, but also of addition, and requires that not only the facts *432 should be stated in the most precise way, but also that all the facts which shew that those stated as the cause of action or defence cannot be controverted, is seldom, if ever, required. Perhaps it may be, as was said by judge Buller, in Dovaston vs. Payne, 2 H. Black. 530, applicable to pleas of estoppel. But in general, as was said by Ch. J. DeGrey, in the King vs. Horne, Cowp. 682, it “ is rejected in all cases, as partaking of too much subtlety.”
Having stated these rules as preliminary to the consideration of the defendant’s rejoinder, to which the plaintiff demurred generally, I will now address myself to the case presented to us. The actions were against the defendants as sureties of Eleanor Spann in her administration bond. They severally pleaded non est factum, and performance. Upon the former, issue was joined ; to the latter the plaintiff replied, setting out the debt to the Bank of Charleston, by judgment against the administratrix, and a devastavit. To this the defendants rejoined, by admitting that the assets of the deceased were sufficient to pay his debts ; that the heirs and distributees had instituted proceedings in Equity for partition^ whereby the real and personal estate of the deceased had been distributed, but that in that case the rights of creditors had been preserved, and that the property had been declared by the decree of the Court of Equity, directing partition, to be liable to the lien of the judgments and ji. fa’s, which might be recovered and issued against the said Eleanor, as administratrix ; and that under and by virtue of the Ji. fa's', of the Bank of Charleston and of M. Inglesby and J. S. Inglesby, against the said Eleanor, as administratrix, for the debts of her intestate, the sheriff of Sumter had sold a part of the land of the deceased for $10, and a part of his slaves for $3965, which was more than enough to satisfy the said executions ; and concluded with a traverse of the devastavit, and prayer of judgment, if the plaintiff ought to have or maintain his action.
The first rule in framing a rejoinder is, that it should support the plea. Now, does this replication support the plea 1 It shews that the administrtrix did perform her duty according to law, in delivering the intestate’s estate to the distributees, *433 in pursuance of a decree of a court of competent jurisdiction, which guarded the rights of the creditors ; and that the plaintiff in the case before us had sustained no injury, inasmuch as the sheriff had made the money claimed by the fi. fa. and that, therefore, she had not wásted the goods. Is the matter sufficiently and properly set out in the rejoinder 1 is answered by saying, that a general demurrer does not make that question. But I am very much disposed to say that the rejoinder is sufficient, if even tested by a special demurrer. For the matter set out, makes . only one entire defence. The proceedings in equity were necessary, to shew that Eleanor Spann had not been guilty of a devastavit in permitting the property to go out of her hands, and that out of it the plaintiff had rightfully obtained, or might obtain, satisfaction. Put in this way, it would only make one defence, consisting of two parts. But in another point of view it would steer clear of the objection of duplicity. For the statement of the proceedings in Equity may be considered as inducement to the defence, that out of the assets of the estate, the plaintiff, notwithstanding the partition, had the right to have, and had in law obtained, satisfaction ; and that therefore there was no devastavit by defendant’s principal. The decree set out, clears up the objection which possibly might have been made to the creditor’s proceeding by execution against the land or goods after partition, by shewing that the distributees took subject to that right. The facts, too, are laid with sufficient certainty ; if that question could be considered on a general demurrer, which I by no means admit. Ask the question upon this pleading: has not the plaintiff had satisfaction of the debt? The answer must be in the affirmative, unless you look to possible facts.
In considering a rejoinder, we cannot look beyond it, and suppose a state of facts which might avoid it. It is the business of the plaintiff, if such exist, to state them by way of surrejoinder.
It was argued that the decree in equity set out in the rejoinder, was inter alios, and therefore could neither be pleaded nor given in evidence against the plaintiff. But that argument proceeds upon a mistake; the decree here *434 is not presented as an estoppel, nor even in bar; it is part of the title of the distributees to the possession of the assets of Charles Spann deceased, which shews that notwithstanding it, yet the plaintiff may, and of right could, enforce his execution, as he might and could have done if the assets had been in the hands of the administratrix. In this point of view it is, like every other fact which clears up a case and removes objections which might otherwise be set up by third persons, admissible evidence.
But it was argued and put with great force, that conceding all which is stated in the rejoinder, still the plaintiff was not barred. 1 think, however, that the rejoinder presents a statement of facts from which a devastavit is clearly negatived. It is in this way that I arrive at that conclusion. A levy of a value equal to the debt demanded, undisposed of, is in law a satisfaction. This was fully adjudged in Mayson vs. Irby & Day* decided at Dec. session, 1828, in Columbia, in the Court of Appeals in Equity, MSS. Book D. p. 109. In that case the execution of Irby had been levied on a negro, which had been suffered to remain in possession of the defendant in execution, and had been by him carried away; the plaintiff released that levy, and levied on other property which had been previously attached by Mayson ; it was held that the execution could not be enforced further, until the previous levy had been disposed of in satisfaction of the execution. Taking this as settled law, what is the legal inference from the fact of sale stated in the rejoinder ? It is, that the sheriff had levied on and sold under the executions, the property of the intestate, to a sum sufficient to pay the debt of the plaintiff. This states more than a legal satisfaction, it is a satisfaction in fact. For that there was a levy, is to be inferred from the sale — and from the sale, to a sum equal to the debt, satisfaction in fact, necessarily results, unless in some way it be shown it could not. For when a sheriff sells property for cash, the legal presumption is, he has the money, until he shows that without any fault on his part, he did not and could not get it. How the qualification suggested to the legal presumption just stated can in in this case exist, I do not perceive. Still, if it does, the *435 plaintiff can have the benefit of it in his surrejoinder, which he was by the circuit decision allowed to put in.
The motion is dismissed.
Richardson, Evans, Butler and Frost, JJ. concurred.
Wardlaw, J. dissented.

D. Mayson vs. Irby & Day.
Heard at Laurens, before Desaussure, Ch. July, 1828.
By the Ch. The briefs furnished the court in this case, accompany this decree, and form part of it. The ease is substantially as follows : Mr. Irby, one of the defendants, obtained a judgment at law against George Teague, at Nov. court, in the year 1826, for $630, together with interest and costs; and an execution was lodged in the office of the sheriff of Laurens district. Whereupon, a levy was made on the 13th Dec. 1826, on a female slave, (Dorcas) the property of the said Teague. The sheriff permitted her to remain in the possession of the said Teague, on a stipulation in writing made by one lawyer Boyd, that she should he forthcoming on the ensuing sale day. The said slave remained in the possession of the said Teague, until the 1st Dec. 1827, when the said Teague privately removed himself and all his personal property, (including the slave Dorcas) out of the limits of the State, except a slave named Beverly, who refused to go with him. Mr. Irby, finding that the property levied upon under his execution had been carried off, caused a levy to be made on the slave Beverly, and he has been sold under that execution, and Mr. Irby has had the benefit of that sale. After Teague’s flight with Dorcas and other property, and before the levy on Beverly under the execution of Mr. Irby, Mr. Mayson, the complainant, a creditor of Teague, had caused an attachment to be issued, and Beverly was seized under that attachment, and the said slave was delivered to him on his giving bond to the sheriff for his forthcoming. He afterwards delivered him up to the sheriff, by whom he was sold under Mr. Irby’s execution, as before stated. A good deal of evidence was given in the cause, which is contained in my notes taken at the hearing, which accompany this decree as part thereof. At the hearing, it was argued on behalf of the complainant, that as Mr. Irby had two securities, and Mr. Mayson, another creditor of Teague, had only one, he was bound to use that one which would leave the other to the second creditor ; and not having done so, he should bear any loss which may have been sustained. The principle stated is a sound equitable one, but its application depends on circumstances. It does not appear to me, that a creditor levying on personal property of his debtor under an execution, is *436 bound to follow up that levy by an actual and immediate sale, at the risk of losing his priority of lien on the other personal estate of the debtor, in case that property should perish by natural death, conflagration or other casualty; or even by its being abstracted from the operation of the levy, by the misconduct, fraud, or bad faith of the debtor. It is very much the habit of the country, (and a very kind and benevolent one it is) for creditors, when they have obtained judgments and made levies on the property of their debtors, to be indulgent to them, and to give them time and opportunity to collect their funds and pay off the money due on the judgments and executions, without making enormous sacrifices by ruinous public sales ; and I have never before heard it argued, that if the property levied on perished or was put out of the way, that creditors lost their right of priority, and their power to make new levies on other property of the debtor, notwithstanding that property had been levied on by younger judgements, or even attachments. Indeed, according to our usage, (perhaps different from the English practice,) where executions are lodged merely to bind, and younger executions actually levy on the personal property and make sales, the officer is bound to apply the proceeds of the sales to the elder executions.
There is but one ground upon which I apprehend that the owner of the first execution and levy might be postponed to the younger, and that is where he connives with the debtor, and designedly enables him to commit a fraud, by which subsequent creditors are injured. In that case, the court, ever jealous of fraud, and indignant at its perpetration, would make the creditor holding the prior lien, and fraudulently abusing it to the prejudice of the younger creditor, sustain the loss, for fraud contaminates and vitiates everything.
I do not, however, perceive in the case we are considering, any evidence of fraud on the part of Mr. Irby. Indeed, the court would require very strong proof, direct or circumstantial, to induce it to ascribe fraud to a man of known good character.
It appears to me, therefore, on a review of all the circumstances, that the complainant is not entitled to relief against the defendant, Irby. With respect to Mr. Day, the sheriff, who is also a defendant, it does appear to me that the remedy of the complainant, if he has any just claim, is notin this court. The complainant substantially states that the officer has not done his duty, by which the complainant has been a sufferer. This seems to me a question of damages, proper for a court of law and for a jury. It is therefore ordered and adjudged, that the bill be dismissed with costs.
The complainant appealed, and in December, 1828, the appeal was heard.
Curia, per Colcock, J.
We are constrained to take a different view of this case from that which has been taken by the chancellor. It is true that our law in regard to the lodging of executions to bind the property, does differ very essentially from the common law of England, and it often causes us great regret that it is so; for it produces innumerable embarrassments, and may be, and no doubt often *437 is, the means of practicing frauds. But although we permit the older executions to take the money, and to retain their priority even when not enforced, yet we have never carried the doctrine so far as to suffer the plaintiff or sheriff to levy on property, and to release it at will, to the injury of others. When a levy is once made, the execution is satisfied. The property, therefore, was in the sheriff, and he left it with the debtor, under a bond of indemnity given by James Boyd. If the plaintiff thought proper to discharge the levy, that was his own act, and may amount to a release of the sheriff’s liabiliity to him, but cannot be suffered to prejudice the rights of others. This is not imputed to the- defendant, Irby, as a fraud in any moral sense, but it was an illegal proceeding, after putting it in the power of his debtor to carry off the property levied on, then to discharge the levy, for the purpose of taking other property from another creditor, who had in the mean time obtained a lien on it; and to the complainant it is not material whether this was the result of fraud, or mere negligence, or a mistaken view of his rights.
Irby, by the sheriff, had taken his debtor’s property. It is enough that it was their business to take care of it. I do not mean to go so far as to say, that if the wench Dorcas had died after the levy, that Irby may not have proceeded against any other property of his debt- or. But if sue h other property was in the mean time encumbered with other liens, I will not determine that even in that case it could be taken from other creditors.
The question here, however, stands on very different grounds ; for in fact the wench is now in the possession of Boyd, who was bound to deliver her to the sheriff; and she is still bound by the execution and levy — she is the sheriff’s. His sale of Beverly under the execution was illegal, and the complainant is entitled to the proceeds of the said slave, or so much as may be necessary to pay his debt. Jf after the sale of Dorcas there is any balance due on the execution of Irby, and the sum for which Beverly sold is more than sufficient to pay the complainant, the surplus may be applied to Irby’s execution, so far as we can see the matter in this case.
It is therefore ordered and decreed, that the decree of the Chancellor be reversed, and that the defendants pay the demand of the complainant, or so much thereof as the negro Beverly will pay.
Nott and Johnson, JJ. concurred.